## UNITED STATES

v.

**Captain Kevin H. CANNON, 211–50–8690 FR, United States Air Force.**

**ACM 28017.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 June 1989.

Decided 23 April 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Ronald A. Gregory.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Terry M. Petrie; Major Paul H. Blackwell, Jr. and Captain Leonard R. Rippey.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

PRATT, Judge:

An adulterous affair between a C–130 pilot and the dependent wife of a maintenance crew chief led to the general court-martial of the pilot for conduct unbecoming an officer (adultery and sodomy) and willful disobedience of an order from his commander to stay away from the enlisted man's wife, in violation of Articles 133 and 90, UCMJ, 10 U.S.C. §§ 933, 890. The appellant was acquitted of the latter offenses, but was found guilty of conduct unbecoming an officer through adultery on divers occasions and was sentenced by a panel of officers to a dismissal.

On appeal, the appellant urges that his sentence to a dismissal is inappropriately severe in light of the limited findings of guilt, the extenuating evidence, and the clemency recommendations. For reasons stated later in this opinion, we disagree.

In addition, appellant invites our attention to two issues involving the admission of hearsay statements made by the appellant's wife and the "chilling effect" on the defense of the military judge's stance on the admissibility of uncharged misconduct in rebuttal.

## I

■ As regards the cited hearsay statements, one was not objected to and the other two, even assuming their admission was improper, constituted harmless error. Article 59(a), UCMJ, 10 U.S.C. § 859(a). All three statements related to the existence of the adulterous affair between the appellant and the airman's wife, RL. Although the appellant contested that offense, the evidence of his guilt was overwhelming without any regard to the offending hearsay.

RL testified about the affair in considerable detail, describing the circumstances of its inception as well as the time and place of each sexual encounter. While appellant's acquittal of the sodomy offense might suggest that the trial defense counsel's attack on RL's credibility was somewhat successful, the prosecution had other convincing evidence to corroborate the adultery allegation; namely, several motel receipts (one with a fictitious address and middle initial) corresponding to RL's description of events, and perhaps most damning, testimony by a friend of the appellant to the effect that the appellant told him on at least two occasions that "he was going to bed with her and the sex was great." Given the state of the evidence, we are convinced beyond a reasonable doubt that the admission of the challenged hearsay statements, if error, was harmless and had no impact on the findings. *United States v. Logan*, 18 M.J. 606 (A.F.C.M.R. 1984).

## II

■ Next, the appellant invites our attention to the military judge's "position" on the admissibility of uncharged misconduct, complaining that "[t]he possibility of admission throughout the trial had a chilling effect on the defense presentation and caused the appellant not to testify."

This complaint stems from a pre-plea motion in limine whereby the defense counsel sought to block the admission of certain uncharged misconduct. This uncharged misconduct is best described by a passage from the prosecution's written response to the defense motion:

> The United States is in possession of evidence that the accused solicited two minor girls to have sexual intercourse and engaged in other improper activities with married women near Rhein Main AB, Germany [in 1984]. In addition, we possess evidence that the accused bragged of numerous extramarital sexual activity [sic] and carried on an affair with a friend of the victim in this case immediately prior to beginning the acts which form the basis for the charges.

During discussion on the motion, the trial counsel stated that he did not intend to seek admission of the uncharged misconduct in his case-in-chief, but did fully intend to use it in rebuttal if the defense were to "open the door" through the presentation of good military character evidence or otherwise. The defense counsel was unsuccessful in convincing the military judge to rule that the uncharged misconduct was inadmissible or unusable even in rebuttal on the grounds that the various components of uncharged misconduct were insufficiently substantiated and/or overly prejudicial. Instead, citing an inability to anticipate what might occur during the presentation of the case, the military judge essentially deferred any specific ruling. In so doing, however, she did imply that the prosecution would at least be able to use the information in testing the opinion of any witnesses addressing good military character.

Throughout the trial, the defense counsel went to considerable lengths to avoid "opening the door" to the cited misconduct. In various Article 39(a) sessions, discussions ensued as the defense counsel sought some indication from both the trial counsel and the military judge as to whether or not a witness or a particular line of testimony would be considered to have opened the door. In our view, both the trial counsel and the military judge were more forthright, advisory, and helpful in this regard than either was required to be.

It is readily apparent, as appellate counsel alleges, that the possible admission of

such uncharged misconduct did indeed have a "chilling effect" on the presentation of the defense case and likely accounted for the decision not to have the appellant testify at trial.

However, there is no requirement that an accused and his or her counsel be free of a "chilling effect" created by legitimate impeachment or rebuttal evidence. The rules of evidence contain various recognized avenues or "doors" through which evidence otherwise inadmissible in a case-in-chief may legitimately be brought before the court in rebuttal. *See* e.g., Mil.R.Evid. 304(b)(1), 311(b)(1), 404(a), 404(b), 405(a), 405(c), 607, 608, 609(a), 612, 613, and 801(d). Tactical decisions by defense counsel, designed to keep such "doors" closed, are a legal fact of life and often call for foregoing the presentation of evidence or witnesses (including the accused) favorable to the defense.

Unfortunately, another fact of life is that a defense counsel cannot always obtain a definitive preview of exactly what evidence or testimony will be deemed to have opened such a "door." While motions in limine at the outset of the trial are extremely useful in this regard, it is well established that the trial judge has considerable discretion to defer ruling on such motions until the issue has "ripened" sufficiently to enable an informed decision. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Cofield*, 11 M.J. 422 (C.M.A.1981); *United States v. Saul*, 26 M.J. 568 (A.F.C.M.R.1988); *pet. denied*, 27 M.J. 434 (C.M.A.1988). Thus, absent an abuse of discretion by the trial judge, the fact that she deferred ruling on the motion in limine is not error and does not afford the appellant a basis for complaint. We find no such abuse.

It is fair to say that the military judge's part in the discussion on the motion in limine, and in the related discussions which took place at various points throughout the trial, inferred that her ruling on the issue, once ripened, would probably have permitted the use of the uncharged misconduct in some fashion. However, before defense counsel's reliance on that inference could even arguably give rise to a valid complaint, we would have to find that the inferred ruling, if it were ever formally made, would have been in error. We do not.

■ The prosecutor's stated intent was to use the uncharged misconduct on cross-examination in the form of "Did you know ...?" questions as a means of testing the opinion of any defense witnesses who would testify to the appellant's good military character. Mil.R.Evid. 405(a) specifically allows such inquiry into "relevant specific instances of conduct." Inasmuch as opinion testimony on good military character would have been relevant to offenses of adultery, sodomy, and willful disobedience, evidence of prior adulterous relationships and solicitations would have been equally relevant in testing such opinion testimony. *United States v. Wilson*, 28 M.J. 48 (C.M.A.1989); *United States v. Pershing*, 28 M.J. 668 (A.F.C.M.R.1989). Despite the protestations of the defense counsel to the contrary, the record suggests that the trial counsel had a good faith belief that the misconduct had occurred, and the trial judge would have had broad discretion in concluding that the its probative value was not substantially outweighed by the danger of unfair prejudice. Mil.R.Evid. 403. *See generally United States v. Pearce*, 27 M.J. 121 (C.M.A.1988).

Accordingly, we find that any "chilling effect" that the appellant or his counsel may have suffered was the natural result of the existence of legitimate rebuttal or impeachment evidence, and not any error by the trial judge.[1]

---

1. In view of this conclusion, we need not address whether the speculative nature of the alleged prejudice, *if* the trial judge had made an erroneous ruling on the motion in limine, would have precluded the appellant from obtaining appellate relief. *See Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *United States v. Chambers,* 29 M.J. 76 (C.M.A.1989); *United States v. Gamble,* 27 M.J. 298 (C.M.A.1988); *United States v. Cofield,* 11 M.J. 422 (C.M.A.1981); *United States v. Sutton,* 27 M.J. 578 (A.F.C.M.R.1988), *pet. granted,* 28 M.J. 458 (C.M.A.1989).

## III

■ Although defense counsel went to great lengths to avoid having the above-cited uncharged misconduct come before the court members, a portion of that misconduct nevertheless found its way into evidence in a rather roundabout manner. We find the admission of this uncharged misconduct, which also constituted hearsay, to have been error.

Prior to appellant's affair with RL, he is reported to have engaged in a brief affair with CS, a friend of RL. This uncharged misconduct is reflected in each of the two sworn statements which RL gave to the OSI during their investigation of this case. Specifically, in her first statement, RL states:

> One of my teammates from [appellant's] softball team, [CS], has told me she and [appellant] had also had a sexual relationship.

In her second statement, RL provided additional detail concerning this misconduct:

> I told [CS] I was having problems at home, and [CS] said she understood how I felt. At this point, [CS] told me she had had an affair with [appellant] at the beginning of the softball season 1988. She told me she had sexual intercourse with him on approximately two occasions, during which on [sic] time they were at her ([CS's]) house in bed together, when her son, [CHS], walked in on them. [CS] told [CHS] it was his father she was with. [CS] said at this point she ended the affair with [appellant] because she was scared she would get caught.

During his cross-examination of RL, defense counsel made momentary reference to an entirely different portion of these statements as he attempted to clarify an apparent inconsistency concerning her husband's duty schedule. Immediately after the cross-examination, trial counsel sought to admit each statement (Prosecution Exhibits *4* and *5*) in succession. As to the first statement, defense counsel simply stated, "No objection," and the statement was admitted into evidence. When the second statement was offered, defense counsel took a moment to review it and then announced an objection "because it contains a number of things which have nothing to do with my cross or his direct." The following exchange ensued before the members:

MJ: For what purpose are the statements being offered?

TC: Under Military Rule of Evidence 106, Your Honor, the rule of completeness to show that her statement is absolutely consistent with what she testified here in court. The Defense Counsel is attempting to impeach her on some point from a six page statement in order to try to infer that somehow she has forgotten something or is mistaken. I am offering this to show that the bulk of the statement, 99.9 percent of this statement is absolutely consistent with everything she said here in court today because it is the truth.

CIV DC: Your Honor, I would just observe that 99.9 percent of the statement has not been heard by the members yet, but if he is going to ask her about it, I would object to it as not rebuttal.

MJ: I will admit Prosecution Exhibit 5 for identification as Prosecution Exhibit 5.

Trial counsel's theory of admissibility appears to represent a somewhat unusual blend of Mil.R.Evid. 106 and Mil.R.Evid. 801(d)(1)(B). While we have serious reservations about the admissibility of the statements under either of the cited rules of evidence as they would apply to this situation, we will focus our attention on the one portion of each statement which we find to be clearly inadmissible—namely, the portions recounted hereinabove referencing the appellant's alleged affair with CS.

■ Although the defense counsel failed to object to the admission of the first statement, which contained a brief reference to appellant's dalliance with CS, we decline to find waiver of the error in these circumstances. First of all, neither of trial counsel's theories of admissibility justified the admission of this uncharged misconduct from either of the statements. Secondly,

the offer of these statements into evidence, inasmuch as they contained this uncharged misconduct, violated an earlier order by the trial judge that required the trial counsel to request an Article 39(a) session before "going into" such matters.[2] Assuming the remainder of the statements were admissible as prior consistent statements, it would have been an easy matter to remove the offending portions from the statements prior to their admission. Instead, without benefit of an Article 39(a) session, the statements were offered and admitted, thus placing before the members inadmissible uncharged misconduct which the defense counsel had taken great pains to avoid.

Under these circumstances, we find the admission of the referenced uncharged misconduct to be error. However, as discussed earlier, we find the evidence of appellant's guilt of the adulterous behavior overwhelming. As such, we are confident that this error, at least as to findings, was harmless. *See United States v. Mann*, 26 M.J. 1 (C.M.A.1988). We will, though, consider its impact on sentencing.

### IV

■ Appellant's principal contention on appeal concerns the appropriateness of his sentence to a dismissal under the facts and circumstances of this case. We have carefully reviewed the record of trial and considered the extenuating matters addressed in the appellate defense brief, as well as the clemency materials submitted on behalf of appellant. On balance, we find that the aggravating circumstances attending this case outweigh any extenuating factors and fully justify the sentence arrived at by the panel of officers at trial.

Appellant, a 30–year old C–130 aircraft commander, with a wife and two children, engaged in repeated adulterous conduct with the dependent wife of an Airman First Class responsible for maintaining such aircraft. Some of these acts of sexual intercourse occurred in the appellant's on-base quarters, while others reportedly took place at the airman's off-base apartment. While appellate counsel remind us that the airman and his wife were experiencing marital difficulties before this affair began, we note that appellant took advantage of those difficulties to establish his amorous extramarital relationship with RL and, not surprisingly, caused their marital strife to worsen considerably.

Although RL was a willing participant, the airman was clearly victimized by this crime. The impact upon the airman—his marriage, his job, and his perception of Air Force officers, was significant and foreseeable. Furthermore, while RL's non-military status precludes a technical charge of fraternization, her status as the dependent wife of an airman gives this offense many of the attributes of fraternization in terms of its impact upon the military community and upon the perceived integrity of the officer corps.

Considering the totality of the circumstances surrounding this offense, we are not at all surprised that a panel of officers would return a sentence which included a dismissal. In fact, considering only the evidence properly before them, *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990), we find no reasonable likelihood that their decision to adjudge a dismissal turned on the erroneous admission of the uncharged misconduct discussed above. *United States v. Maharajh*, 28 M.J. 797 (A.F.C.M. R.1989). Even if the cited uncharged misconduct had not been admitted before the members, we are confident that a dismissal would have ensued. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). For our part, having considered as well the post-trial submissions on behalf of the appellant, we nevertheless find that the sentence is

---

**2.** During the initial motion in limine, although the defense counsel was unsuccessful in securing a definitive ruling from the trial judge on the admissibility of this (and other) uncharged misconduct, he did persuade the judge to order the trial counsel to request an Article 39(a) session prior to "going into that type of evidence since I have not ruled on it." Considering the context in which it was given, this order was clearly broad enough to encompass this situation.

appropriate as adjudged. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

## V

One final matter merits brief mention. Our review of this case disclosed that the record of trial and allied papers did not indicate whether the clemency materials submitted by the appellant were considered by the convening authority as required by Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2), and R.C.M. 1107(b)(3)(A)(iii). *See United States v. Craig,* 28 M.J. 321 (C.M.A.1989). As a result, we issued an order directing the United States to show cause why the action of the convening authority was not premature. In response thereto, the government has submitted an affidavit by the convening authority attesting to his due consideration of said clemency materials prior to his action on this case. In consideration of this affidavit, we are satisfied that the requirements cited above were duly met. *See United States v. Youngren,* 28 M.J. 255 (C.M.A.1989) (summary disposition) and *United States v. Blanch,* 29 M.J. 672 (A.F.C.M.R.1989).[3]

We conclude, then, that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Judge SPILLMAN concur.

---

**3.** *See United States v. Foy,* 30 M.J. 664 (A.F.C.M. R.1990) for suggested procedures to avoid this recurring problem.