UNITED STATES, Appellee

v.

Jennifer R. LEMASTER, Airman First Class, U.S. Air Force, Appellant.

No. 93–1059.
CMR No. 29531.

U.S. Court of Military Appeals.

Argued April 12, 1994.*

Decided Aug. 23, 1994.

For Appellant: *Captain Richard D. Desmond* (argued); *Colonel Jay L. Cohen* and *Captain Ursula P. Moul* (on brief); *Lieutenant Colonel Frank J. Spinner* and *Lieutenant Colonel G. Michael Lennon* (USAFR).

For Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Jeffery T. Infelise* (on brief); *Colonel Richard L. Purdon*.

*Opinion*

COX, Judge:

In this case we are asked to determine whether appellant was entrapped by agents of the Air Force Office of Special Investigations (OSI) into committing the offense of attempted possession of cocaine.[1] We con-

---

* We heard oral argument in this case at the United States Air Force Academy, Colorado Springs, Colorado, on Tuesday, April 12, 1994, as part of "Project Outreach." *See United States v. Stinson*, 34 MJ 233, 234 n. * (CMA 1992).

1. On August 22–23, 1991, appellant was tried by a general court-martial military judge sitting alone. Pursuant to her pleas, she was found guilty of using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a, and, contrary to her pleas, she was convicted of attempting to possess cocaine, in violation of Article 80, UCMJ, 10 USC § 880. She

was sentenced to a bad-conduct discharge, confinement for 6 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Military Review affirmed. We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING APPELLANT'S MOTION TO DISMISS SPECIFICATION 2 OF THE CHARGE [POSSESSION OF COCAINE] WHEN APPELLANT WAS ENTRAPPED IN VIOLATION OF HER DUE PROCESS

clude that the Government did not satisfy its burden of proving that appellant was not entrapped. *United States v. Vanzandt,* 14 MJ 332 (CMA 1982). Accordingly, we set aside the conviction for that offense.

At the time of the offense at issue, "appellant was a 24–year–old, emotionally unstable, alcoholic, assigned to Malmstrom Air Force Base, Montana, whose husband and two small children had [just] left her and were living in West Virginia." She was suffering from severe depression when she became involved with Staff Sergeant (SSgt) Munger. CMR unpub. op. at 1–2 (March 26, 1993).

SSgt Munger met Jennifer Lemaster at the Beacon, a local bar, in October 1990. They talked at the bar, and after it closed, they went to breakfast at JB's Restaurant. On the way to the restaurant, appellant asked Munger if he "wanted to get high," but Munger declined. The OSI learned of appellant's inquiry and contacted SSgt Munger to begin working for them as an informant. Munger agreed to continue his relationship with appellant and work for the OSI. At that time, he had known appellant for less than a week, and she had spent the night with him once.

The OSI agents' instructions to SSgt Munger were "real vague." SSgt Munger admitted that, during his relationship with appellant, their conversations regarding drugs were "few and far between." On one occasion, he had asked appellant to buy some marijuana for him, but she had refused. In January of 1991, Munger eventually asked the OSI "to speed things up" because he was planning to go to a party and wanted to "hit on" another girl. A sting operation was planned.

The night before the sting, SSgt Munger met with an OSI Special Agent (SA) James Siler, who was to pose as Munger's old friend "Stumpy" in the sting operation. The next night, Munger took appellant on a date for the first time in their 4–month relationship; the two went to a bar in a nearby town. At

the bar, they ran into SA Siler, and Munger introduced him as his old friend, "Stumpy." The three had drinks and started playing pool.

On the side of the pool table was a sign instructing anyone who "knock[ed] a ball off the table . . . to put a quarter in the pot" for "a pot party" at the end of the year. SSgt Munger and Stumpy laughed about the sign, and the conversation turned to a discussion of drugs. The men discussed the drugs they did when stationed together in the Philippines and how Stumpy got kicked out of the Air Force for doing drugs.

Munger asked Stumpy if he "was still partying," and Stumpy said that he was. Then Stumpy said that he had "party favors." When he said he had marijuana, appellant showed no reaction. Stumpy then said he also had cocaine. Appellant had mentioned to Munger some time earlier that she wanted to try cocaine with him because it was a "good high." Appellant and Munger agreed to buy some cocaine, but appellant did not have any money. Appellant was going to cash a $30 check at the bar, but Stumpy said he would take a check from her. She handed Stumpy the check so he could fill in his name since she did not know it, and Stumpy filled in his name and handed the check back to appellant. He told appellant "to put a 'C' in the memo" space "so she would remember what" her check "was for." Appellant put a "C" on the memo line and attempted to give the check back to Stumpy. He would not take the check inside the bar and asked her to wait and give it to him when they were in his vehicle.

After finishing their game of pool, the three went to Stumpy's car. Appellant got in the front seat with Stumpy, and Munger got in the back seat. Appellant gave Stumpy the check for $30, and Munger gave him $20 cash for the cocaine. Stumpy asked appellant if she wanted to see the cocaine but she declined. He gave her the "bindle" [2] of some

RIGHTS BECAUSE OF OUTRAGEOUS CONDUCT OF THE GOVERNMENT'S INFORMANT IN USING A SEXUAL AND EMOTIONAL RELATIONSHIP TO ENTICE HER TO ATTEMPT TO POSSESS COCAINE.

2. A "bindle" is a packet of folded paper used to contain cocaine. Without explanation, the military judge found appellant not guilty of possession of cocaine but guilty of attempted possession. Apparently, the judge was not convinced

substance, representing it to be cocaine, then promptly signaled the other agents. The agents pulled appellant, Munger, and Stumpy out of the car and handcuffed them as if they were all being apprehended.

After appellant spoke with the OSI, she had a friend pick her up and take her to SSgt Munger's house where a party was going on. Appellant went to Munger's bedroom and passed out wearing one of his t-shirts. She awoke later to find SSgt Munger "having sex with" her.

Appellant "was in love with" SSgt Munger, and Munger knew that appellant "had feelings for" him. SA Siler testified that on the night of the sting, appellant and Munger acted affectionately toward each other, as boyfriend and girlfriend. Munger considered appellant "edgy," "psychotic," "emotionally a wreck," and an alcoholic. When Munger told the OSI of appellant's problems, they responded by saying appellant was "just a f − − −ing wasteoid." Munger continued to have intercourse with appellant during his work as an OSI informant, even though he claims he did not enjoy it and considered appellant to be "one night stand material." Munger had oral and anal sex with appellant, and he joked with OSI agents about having oral sex with her despite the fact that he thought she was "so stupid [he] felt sorry for her."

At trial, appellant moved to have the cocaine charge dismissed on the basis that the government agents had entrapped her. The military judge denied the motion, stating:

Okay, on the motion to dismiss Specification 2, I find that, first of all, that there has been evidence that the accused was predisposed to use and possess contraband drugs.

Secondly, I find the government did not induce the accused to commit the offense alleged, but rather provided the opportunity for her to do so.

Third, I find that the conduct by the government, its agents, and source, including the sexual relationship and contacts between Sergeant Munger and the accused, and the knowledge thereof by OSI agents,

was not so egregious and outrageous [as] to warrant dismissal of Specification 2 as a matter of law based on a denial of due process.

Military law recognizes the entrapment defense. *United States v. Whittle,* 34 MJ 206 (CMA 1992); *United States v. Vanzandt,* 14 MJ 332 (CMA 1982). But an accused has a tough row to hoe to secure acquittal by virtue of entrapment because "[a] law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes." *United States v. Whittle, supra* at 208, *quoting United States v. Evans,* 924 F.2d 714, 717 (7th Cir.1991).

Appellant asks us to dismiss specification 2 because in this case the conduct of the government agent, Munger, was "so outrageous, fundamentally unfair, and shocking to the universal sense of justice that prosecution is proscribed by the Due Process Clause of the Fifth Amendment." Final Brief at 7, *citing United States v. Russell,* 411 U.S. 423, 431, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); and *United States v. Hampton,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). *See also United States v. Bell,* 38 MJ 358, 370 (CMA 1993) (Sullivan, C.J., concurring, *citing dicta* with approval); and *United States v. Harris,* 997 F.2d 812, 815 (10th Cir.1993). *But see United States v. Tucker,* 28 F.3d 1420, 1426 (6th Cir.1994) ("the 'due process' defense . . . simply does not exist"), *cert. filed,* 63 U.S.L.W. 3463 (11/23/94).

While it is tempting to react in outrage to this set of circumstances, we need not do so here. We naturally do not endorse the government agent's conduct. It is reprehensible to believe that agents of the OSI would condone the adulterous, sodomous criminal behavior of this agent in order to make a simple-possession-of-cocaine charge against this vulnerable servicemember. On the other hand, we cannot blind ourselves to the nether world wherein live those who blatantly disregard bonds of matrimony, use drugs and abuse alcohol and who can be trapped (not entrapped) only by appealing to their lack of morals and willingness to flout the

beyond a reasonable doubt that the Government had proved the substance to be cocaine.

law. *See United States v. Barry,* 961 F.2d 260 (D.C.Cir.1992).

Thus, the line between acceptable tactics by government agents/authorities and outrageous behavior is difficult to draw, particularly, with any objectivity. At best, the line is often blurred. In any event, clearly this appellant was induced to participate in this crime in circumstances which belie any independent *mens rea* other than that of the government agents involved. This is not the classic entrapment case where all the Government need to prove to defeat claims of entrapment is that the accused was "predisposed" to commit the offense in question. *United States v. Vanzandt, supra.* There is no doubt that appellant was "predisposed" to possess cocaine. Of course she was. She was predisposed to commit numerous criminal offenses, most of which were suggested and committed, aided and abetted by government agents. The offenses ranged from adultery, oral sodomy, anal intercourse, public drunkenness, use of marijuana (to which she pleaded guilty for there was no entrapment issue) and who knows what else she would do to avail herself of the love and attention being thrust upon her by this government agent.

This case is even worse than *Bell,* where a majority set aside Bell's conviction for use of cocaine because the government agent gave him the cocaine to use. It is closely akin to a case where agents plant drugs in the possession of a predisposed drug abuser and then search her. It more closely resembles a case where a police officer offers an unopened beer to an intoxicated college student and then arrests the student because he opens it and drinks it on a public beach. It is entirely reasonable for government agents to operate "reverse stings" in order to trap those who willingly seek out drugs or prostitutes or fences for their stolen goods. It is quite unreasonable for two government agents to induce an emotionally unstable, alcoholic to participate with them in the commission of numerous crimes and then arrest her because she was unable to resist the love and affection being apparently doted upon her.

Thus, when we focus narrowly on this particular transaction, we find much more than a simple "sting" operation where government agents make available an opportunity for a willing criminal to engage in criminal activity. We literally have government agents setting up an emotionally unstable servicemember, making fun of her, abusing her sexually, and then planting drugs on her in order to rid themselves of her company. Whether this type of police activity is "outrageous" in the Constitutional sense (*see Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)), we need not decide. We hold simply that targeting appellant in this case constitutes improper inducement of a servicemember, particularly by other servicemembers. *Esprit de corps,* good order and discipline, and high morale are not, in any way, enhanced or maintained by this type of police work. At a minimum, it violates the fundamental norms of "military due process" and is the functional equivalent of entrapment. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The decision of the United States Air Force Court of Military Review as to specification 2 (attempted possession of cocaine) of the Charge is reversed and the finding of guilty thereon is set aside. That specification is dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for reassessment of the sentence based on the remaining findings of guilty.

Judge CRAWFORD concurs.

SULLIVAN, Chief Judge (concurring in the result):

I concur in the result reached by Judge Cox; yet I do so on the basis that the conduct of Staff Sergeant Munger (a government informant) and the Air Force Office of Special Investigations, in perfecting appellant's offense, was patently outrageous. *See United States v. Bell,* 38 MJ 358, 370, 372 (CMA 1993) (opinions of Sullivan, C.J.; Gierke, J.; and Wiss, J.); *see also United States v. Cuervelo,* 949 F.2d 559 (2d Cir. 1991). Furthermore, I disagree with Judge Cox's suggestion that the Government did

not defeat the entrapment defense with competent evidence. I find in the record of trial legally sufficient evidence upon which the military judge was able to find beyond a reasonable doubt that appellant was predisposed to possess cocaine. (R. 65, 67, 193–94.) *Cf. United States v. Tatum,* 36 MJ 302 (CMA 1993); *see* 40 MJ at 181 ("There is no doubt that appellant was 'predisposed' to possess cocaine. Of course she was.").

GIERKE, Judge (concurring in the result):

I agree completely with the majority's decision to set aside appellant's conviction of attempting to possess cocaine. I also agree that appellant was such an emotional and physical wreck that she was predisposed to do almost anything suggested by SSgt Munger, the government informant. Because appellant was predisposed to possess cocaine, I cannot join in inventing a new kind of entrapment which is not defeated by her predisposition. *See generally* RCM 916(g), Manual for Courts–Martial, United States, 1984; *United States v. Vanzandt,* 14 MJ 332 (CMA 1982).

The evidence is uncontroverted that, under the direction of the Office of Special Investigations (OSI) agents, SSgt Munger sexually exploited and abused appellant. He committed crimes (adultery and sodomy) to induce her to commit a crime. He, not appellant, arranged the meeting with a "dealer" under the guise of a "real date." The "dealer" was an OSI agent. Munger and the OSI agent introduced the subject of drugs into the conversation. The OSI agent furnished the drugs. Munger furnished part of the purchase money.

In this case the OSI took advantage of appellant's extreme vulnerability to sweep her along in a scheme where the OSI set up the entire transaction, supplied the drugs, furnished part of the money, and then tagged appellant with the crime they had created. In terms of harm to the social fabric, the OSI did more harm than appellant. In my book their conduct constitutes outrageous government conduct warranting reversal. *See United States v. Bell,* 38 MJ 358 (CMA 1993).

WISS, Judge (concurring in the result):

I concur in the majority's disposition of this appeal. The majority rests its decision on its conclusion that appellant was entrapped into her attempted possession of cocaine because Staff Sergeant Munger—a government informant/agent—had so completely taken dominance over appellant's emotional state that she lacked "any independent *mens rea* other than that of the government agents involved." 40 MJ at 181. On the other hand, the majority acknowledges the evidence that "[a]ppellant had mentioned to Munger some time earlier that she wanted to try cocaine with him because it was a 'good high.'" *Id.* at 179. Given this state of the record, I hesitate to hold that the factfinders were wrong as a matter of law in rejecting the entrapment defense. *See United States v. Bell,* 38 MJ 358, 361 (CMA 1993) ("Being limited in our review to questions of law, ... our function is to determine whether there were sufficient facts of record and permissible inferences from which a rational factfinder could have discounted entrapment as a defense, beyond a reasonable doubt.").

Instead, I prefer to base the disposition on appellant's claim that Munger's conduct "was 'so outrageous, fundamentally unfair, and shocking to the universal sense of justice that prosecution is proscribed by the Due Process Clause of the Fifth Amendment.' Final Brief at 7, *citing United States v. Russell,* 411 U.S. 423, 431, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973); *United States v. Hampton,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)." 40 MJ at 180. Munger was a government agent, *see also United States v. Bell, supra* at 372 and 373 (opinions of Wiss, J., and Gierke, J.) (conduct of informant operating under direction of law enforcement agent is attributable to the Government). While performing in that undercover capacity, he did not limit himself to doing that which was absolutely necessary in order to maintain his cover. Instead, it is clear from the record that Munger aggressively led the way in a criminal and humanly reprehensible pattern of emotional and sexual ingratiation of himself with appellant, even to the point of accomplishing appellant's apparent psycho-

logical dependence on him. All this was done with the blessing of—and even in part at the direction of—Munger's Office of Special Investigations handlers. That, in my view, is well across the threshold of outrageousness.