*870 OPINION OF THE COURT
ARQUILLA, Judge:
The appellant was tried by a military judge sitting as a general court-martial. Contrary to his pleas, he was convicted of two specifications of wrongful distribution of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988). The military judge sentenced him to a bad-conduct discharge, reduction to Private El, forfeiture of $200.00 pay per month for 6 months, and a reprimand. The convening authority approved the sentence.
The only defense the appellant raised at trial was that he was entrapped by a Criminal Investigation Command (CID) agent into committing the offenses charged. He asserts as error on appeal that the evidence did not prove beyond a reasonable doubt that the defense of entrapment did not apply in appellant’s case. We disagree.
The appellant was a staff sergeant with approximately fourteen years of honorable service. At the time of the alleged offenses, the appellant was a squad leader. He was also divorced and had recently broken off a five-year engagement to another woman. On the evening of 4 November 1994, the appellant was at the Hurricanes bar, an off-post establishment. No evidence was presented to suggest that this bar was frequented by people involved with illegal drug or other criminal activity. There is also no evidence that suggests that the appellant had ever been involved in any type of illegal drug or other criminal activity, or associated with those who did.[1] To the contrary, the unrebutted testimony of his platoon leader and eight noncommissioned officers (NCOs) described the appellant as a model NCO who cared about his soldiers, and was fully dedicated to mission accomplishment.
While at the Hurricanes bar, the appellant noticed a woman who was apparently by herself. Wishing to talk to her, but being shy, the appellant asked another soldier, Private First Class (PFC) Smead, who was with him at the bar, to talk with the woman to see if she would be interested in meeting him. She told PFC Smead that yes, she would. After PFC Smead told the appellant that the woman was receptive to talking to him, the appellant went over and introduced himself to the woman, who identified herself as Nancy. Unknown to the appellant, the woman was working on her first assignment as an undercover member of the CID drug suppression team. She was 24 years old at the time. The appellant was 32 years old.
There is very little conflict in the evidence as to what occurred at the Hurricanes bar and thereafter. According to the government’s evidence, the appellant and Nancy, after introductions, engaged in small talk. The appellant asked her if she was married, and she responded that she was not. She said she had a boyfriend but that her boyfriend, who was supposed to meet her at the bar, apparently changed his mind and stood her up. The appellant offered to buy her a drink. In her testimony, Nancy stated that she did not know whether his interest in her was romantic or sexual, but admitted that he may have told her that he liked her. On the other hand, the appellant testified that he knew that Nancy was the “right girl for him,” and that he was “just infatuated with her ... so in love with her.” He testified that he fell in love with her “[t]he minute she walked in the bar.”
After engaging in further conversation, Nancy asked the appellant if he “partied.” He asked her, “What do you mean? You mean smoke weed?” He asked her if she was wearing a “bug.” She said that she was not. In his testimony, the appellant stated that he asked her this because he felt like she was interrogating him. He testified that Nancy offered to let him search her, an offer, he stated, he declined. Nancy testified that she asked him if he knew where she could get some marijuana. The appellant respond *871 ed that he did not have any marijuana on him. She asked the appellant if he knew where she could purchase some. The appellant responded that his friend might have some. The appellant then went over and asked PFC Smead if he had any marijuana, and PFC Smead responded that he did not. When the appellant returned to Nancy, he told her that his friend did not have any marijuana. The appellant and Nancy engaged in further conversation. The appellant told Nancy that the person from whom he normally got marijuana was in the field. In his testimony, the appellant denied ever saying this. Although Nancy testified that it was her impression from all their conversations that the appellant used drugs, she admitted that the appellant never stated that he used marijuana. Before departing the Hurricanes bar, Nancy asked for the appellant’s telephone number and said, “Do you mind if I give you a call?”
Three days later Nancy telephoned the appellant. According to Nancy’s testimony, the appellant answered that he was surprised that she had called, stating to her in a giddy manner, “Wow, you called me.” Nancy asked whether he had any marijuana. He told her to call back in five minutes while he checked with others to see if he could find marijuana for her. When she called back, the appellant stated that he still could not obtain marijuana for her, but could later in the week when his friend returned from the field. He asked her to call him two days later.
When Nancy called him two days later, the appellant said that his friend was still in the field, but that he was waiting for her phone call and was going to look for some marijuana. He asked her to call him later in the day. When she did, he told her that he had “gone through the barracks, and [he] couldn’t find any.” The appellant then promised her he would have some the next day and asked her to telephone him then.
The next day Nancy telephoned the appellant at the end of the duty day. At that time the appellant said he had marijuana. The appellant testified that he purchased the marijuana from a stranger on the street in Hinesville, Georgia. He then gave her directions to his house. When she arrived, she entered the house and went into his bedroom. He sat on his bed, and she sat on a chair, and they discussed his previous marriage and his son, whose picture was displayed in the room. She said she could not stay because she was meeting her boyfriend in Savannah, Georgia. Later during their conversation, after she asked him for the marijuana, the appellant pulled out a sandwich bag containing 1.66 grams of marijuana from behind his stereo and gave it to her. The appellant also asked her why she smoked marijuana and inquired as to how she reacted after smoking it. Although the appellant never asked her for money, she placed twenty dollars next to him on the bed before departing the room. She testified she did this “to complete the transaction.” Before she left, the appellant asked her if she wanted any rolling papers to go with it, and she declined his offer. Nancy also testified that the appellant told her that he had friends out in the parking lot in case she tried to arrest him. In his testimony, the appellant denied offering her rolling papers, but admitted that he “jokingly” mentioned the people in the parking lot because he “was just trying to start a conversation.” He said she knew he was joking as well. Nevertheless, Nancy further testified that as she was walking out the door, she said to the appellant, “Do you mind if I call you again?”
During the following week, Nancy telephoned the appellant several times to get additional marijuana. She told him her cousin was visiting her and that the two of them “really liked to party.” He kept telling her to call back the next day. Finally, seven days after the first distribution, the appellant told her diming a telephone conversation, after answering a knock at his door, “Hey, I have a joint. Would you like a joint?” The appellant testified that the person from whom he acquired the marijuana on this date was a stranger to him who just happened to be walking in front of his apartment door at the time. Nancy then made arrangements to meet the appellant in the parking lot of the motor pool where he worked. The appellant was apprehended by members of the drug suppression team immediately after he hand *872 ed her the cigarette containing 0.27 grams of marijuana.
All told, Nancy made a total of ten telephone calls to the appellant. According to the appellant, several of these telephone conversations lasted from fifteen to twenty minutes each. During several of these conversations, the appellant asked Nancy out, asked her to dinner, and asked her to come to his apartment. She kept putting him off — not giving him a definite answer. Nancy always brought up the subject of drugs during the telephone conversations between them. On one occasion, the appellant asked Nancy why she did not get drugs from her boyfriend. In fact, her boyfriend was discussed frequently in these conversations, and she told the appellant that her relationship with her boyfriend was not serious. Although she denied leading the appellant on, she also at first refused to answer a question as to whether the boyfriend she discussed was a fictitious or real boyfriend, but then admitted that she had a boyfriend during part of this time. Nancy also testified that on one occasion the appellant told her, “I’m kind of nervous about this. I don’t know how to tell you, but, you know, I really like you.” He also asked her to move in with him.
This court is required to determine whether the evidence presented at trial was factually and legally sufficient to support a conviction. United States v. Turner, 25 M. J. 324 (C.M.A.1987). The test for legal sufficiency “is whether, considering the evidence in a light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The test for factual sufficiency “is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of the accused’s guilt beyond a reasonable doubt.” Turner, 25 M. J. at 325.
The defense of entrapment applies when “the criminal design or suggestion to commit the offense originate[s] in the Government and the accused ha[s] no predisposition to commit the offense.” Rule for Courts-Martial 916(g). This issue is to be resolved by the fact finder with one exception. . This one exception, to be decided by the military judge as a matter of law, is when the evidence raises an issue as to whether “the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction____” United States v. Bell, 38 M.J. 358 (C.M.A. 1993). See United States v. Myers, 635 F.2d 932 (2d Cir.1980), cert, denied, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980) (discussing Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)); United States v. Jannotti, 673 F.2d 578 (3d Cir. 1982); see also United States v. Lemaster, 40 M.J. 178 (C.M.A.1994). There is some authority for the proposition that the accused’s predisposition to commit the crime does not foreclose the trial judge from dismissing charges on due process grounds. This constitutionally based defense may arise when, as here, there is no reasonable suspicion on the part of law enforcement agents prior to targeting a soldier in a sting-type operation. United States v. Cooper, 33 M.J. 356 (C.M.A. 1991).
In Lemaster, the United States Court of Military Appeals [2] (in a plurality opinion with three of the five judges concurring in the result), held that even in the absence of a violation of the Fifth Amendment due process outrageous-police-conduct standard, a prosecution for attempted possession of cocaine was barred as to an “emotionally unstable alcoholic,” who, even though predisposed to possess cocaine, “was induced to participate in this crime in circumstances which belie any independent mens rea other than that of the agents involved.”[3] Id. at 181.
*873 In Lemaster, the accused’s husband and children had left her to reside in another state, and the Air Force Office of Special Investigations (OSI) targeted the accused after she asked another service member, Staff Sergeant (SSgt) Munger, if he “wanted to get high.” The Air Force Office of Special Investigations recruited SSgt Munger to work as an informant. Staff Sergeant Munger carried on a sexual relationship with the accused, who fell in love with him. Later, when SSgt Munger tired of the accused, he requested OSI to “speed things up” so he could “hit on” another woman. Shortly thereafter, SSgt Munger assisted in arranging the sting that resulted in the accused’s apprehension. In the plurality opinion, Judge Cox (now Chief Judge Cox) wrote that targeting the accused in that case “constitute[d] improper inducement of a service member, particularly by another service member,” and “violate[d] the fundamental norms of ‘military due process’ and [was] the functional equivalent of entrapment.” Id. (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).
We are convinced that the evidence is legally and factually sufficient to support the findings of guilty in this case, and that the defense of entrapment does not apply. In this regard we specifically find the following:
a. There was no improper inducement. Nancy did not initially ask the appellant to distribute marijuana to her; she only asked if the appellant knew where she could get or purchase some. The appellant took it upon himself to supply Nancy the marijuana she wanted. Therefore, the “criminal design or suggestion to commit the offense” originated with the appellant; the government merely afforded the appellant the opportunity to commit the crime. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) and Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).
b. The appellant was predisposed to distribute marijuana. Even if the appellant was not predisposed to distribute marijuana to others, he certainly was predisposed to distribute marijuana to Nancy. The appellant never displayed any reluctance to distribute marijuana to Nancy. Shortly after introducing himself to Nancy, the appellant asked his friend, PFC Smead, for marijuana on behalf of Nancy. The appellant also distributed marijuana to Nancy on each occasion as soon as he acquired it. “[T]he ready commission of the criminal act amply demonstrates the defendant’s predisposition.” United States v. Bell, 38 M.J. 358, 360 (C.M.A.1993) (citing Jacobson v. United States, 503 U.S. 540, 550, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992)).
c. There was no violation of due process. The conduct of law enforcement agents in this case was not so outrageous as to bar prosecution under the Due Process Clause of the Fifth Amendment, nor did their conduct violate “the fundamental norms of ‘military due process’ ” and hence constitute “the functional equivalent of entrapment.” Lemaster, 40 M.J. at 181. The Fifth Amendment due process entrapment defense “arises only in the context of shocking police abuse of an accused.” Bell, 38 M.J. at 365 (citing Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). No such abuse occurred here. While we do not endorse law enforcement agents taking advantage of the loneliness shared by many single and divorced soldiers serving their nation far from their homes and families, and playing on their desire for companionship with a member of the opposite sex to effect a distribution of marijuana, our dislike of this practice is not the issue in this case. United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Also, unlike the facts in Lemaster, the appellant here was not emotionally unstable nor was he abused sexually by the agent involved. We are satisfied from the facts of this case that the appellant was never promised or provided sex for marijuana, and that no improper inducement occurred in this case.
The findings of guilty and the sentence are affirmed.
Senior Judge EDWARDS and Judge GONZALES concur.

. The only possible exception here are words attributed to the appellant by the CID agent who repeatedly requested — and eventually received— marijuana from the appellant. The appellant's statements to the CID agent before his apprehension, if these statements are to be believed and were not mere boasting and puffing, would suggest that the appellant at least knew a soldier from whom he could purchase marijuana and may have obtained marijuana from him in the past.

. Renamed the United States Court of Appeals for the Armed Forces effective 5 October 1994. National Defense Reauthorization Act for Fiscal Year 1995, Pub.L. No. 103-337, § 924(a), 108 Stat. 2663, 2831 (1994).

. The three judges concurring in the result would have reversed the conviction on Fifth Amendment due process grounds.