**UNITED STATES**

v.

**Airman Dean A. CHITWOOD, FR 312–62–4811 United States Air Force.**

**ACM 23054.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 12 Dec. 1980.

Decided 28 Aug. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

## DECISION

MAHONEY, Judge:

Despite his pleas of not guilty, the accused stands convicted of unlawfully receiving and concealing property stolen from the United States Air Force, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The defense contends that the exercise of court-martial jurisdiction was improper because neither offense was shown to have occurred on a military installation. We find the exercise of court-martial jurisdiction was appropriate and affirm.

Late in the evening of 15 August 1980, officers of the California Highway Patrol (CHP) responded to the scene of a traffic accident in the eastbound lanes of Interstate Route 80, in Solano County, California, some 10 miles northwest of Travis Air Force Base. Investigation of the three-vehicle accident culminated in the accused's arrest for drunk driving. Since there was a heavy odor of alcohol in the accused's car, found off the right shoulder of the highway, the CHP officers searched it for alcoholic beverages.[1] None were found in the car, but the officers noticed several sharp indentations and tears in the upholstery of the rear passenger compartment. Outside the car, toward the perimeter fence, the officers found several beer bottles, some of which were still sealed and cool to the touch. Directly over the fence, about ten feet from the accused's car, the CHP officers observed and seized four amplifiers which appeared to have been recently thrown into the grass and mud. Subsequent investigation disclosed that these amplifiers, valued at $5,217.32, had been stolen on the evening of 28–29 July 1980, from the 504th Air Force Band, during a break-in at building 867, Travis Air Force Base, California.[2]

There is no evidence indicating that the accused was involved in the theft, which, including the amplifiers, totalled over $16,000.00 of Air Force band equipment. Evidence that the accused was aware that the amplifiers were stolen is circumstantially overwhelming, but there is no persuasive evidence that he was aware that they were stolen at Travis Air Force Base, or that

they were owned by the United States Air Force. The local district attorney, noting paramount military interest, informed officials at Travis Air Force Base that he would not prosecute the offenses against property stolen from Travis Air Force Base.

█ We find the exercise of military jurisdiction appropriate in this case for two distinct reasons. *First*, the military nature of the stolen property involved warranted the exercise of court-martial jurisdiction,[3] and *second*, the military interest in the offenses against the stolen property could only be vindicated in a court-martial.

*I. Offenses Against Military Property are "Service Connected."*

As made clear by the Supreme Court in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), the *ad hoc* approach to determining the appropriateness of exercising military jurisdiction over offenses by service members does not preclude the defining of certain categories of offenses which are, *per se*, "service connected." The category thus defined in *Relford* was any "offense committed within or at the geographical boundary of a military post and violative of the security of a person or property there." *Relford, supra*, 401 U.S. at 369, 91 S.Ct. at 657, 28 L.Ed.2d at 111. Later, in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Supreme Court noted with apparent approval the category of "service connected" offenses identified by the Court of Military Appeals in *United States v.*

---

1. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), reaffirms the validity of such searches.

2. By unpublished order, dated 20 May 1981, we have already denied the accused's petition for a new trial. Article 73, Uniform Code of Military Justice, 10 U.S.C. § 873. Regardless of whether due diligence was exercised in locating a known witness to the accident, we found it improbable—indeed inconceivable—that a new trial would produce results substantially more favorable to the accused. Manual for Courts-Martial 1969 (Rev.), paragraph 109*d*(2). The accused contends that the recently located witness would establish his lack of opportunity to

remove the amplifiers from his car after the accident. That theory was unsuccessfully advanced at trial. Given the general disarray at the accident scene, little credence could be placed in such a conclusion. Our review of the record convinces us beyond any doubt that, prior to the arrival of the CHP, the accused took the stolen amplifiers from his car and pitched them over the perimeter fence.

3. We find inapposite the case of *United States v. Tucker*, 1 M.J. 463 (C.M.A.1976), which deals with the off base concealment of stolen *non*-military property.

*Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969).[4]

In establishing on-base offenses as *per se* "service connected" within the ambit of *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), the Supreme Court in *Relford* noted the inherent difficulties in distinguishing between military and non-military areas of a post, and in distinguishing between an accused's on-duty and off-duty activities on the post. Similarly, we find it difficult and unnecessary to distinguish between different categories of property held by a military department of the United States for purposes of determining "service connection" of offenses against such property by service members. To one degree or another, all property held by the United States Air Force supports the mission of the Air Force, and the war powers vested in the Congress.[5] Thus, in the context of other specific offenses against such property, delineated by

Article 108, UCMJ, we have held that, "all property held or used by [the Department of the Air Force] from the meanest paper clip to the mightiest bomber has a mediate or immediate military use." *United States v. Foust*, 20 C.M.R. 907, 909 (A.F.B.R.1955).[6]

■ Accordingly, we hold that offenses by service members against military property of the United States are "service connected" for the purpose of determining the appropriateness of exercising court-martial jurisdiction pursuant to *O'Callahan v. Parker, supra.*[7]

## II. Civil Courts of the United States Were Not Available to Vindicate Military Interest in Offenses Against Military Property.

■ In his letter to the base staff judge advocate, the Senior Chief Deputy District Attorney, Solano County, California, stated: "since our office determined the military

---

4. *United States v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969) held that all drug offenses by service members were "service connected." Subsequently, in *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976), the Court of Military Appeals retreated from its blanket categorization of drug offenses. *See also, United States v. Alef*, 3 M.J. 414 (C.M.A.1977). While the Court of Military Appeals has not returned "fully" to its *Beeker* holding, it has held that in analyzing the *Alef* requirements, courts-martial evaluating the appropriateness of their exercise of jurisdiction may rely on the conclusion that "almost every involvement of service personnel with the commerce in drugs is 'service connected.'" *United States v. Trottier*, 9 M.J. 337, 350, and notes 30 and 34 (C.M.A.1980).

5. U.S.Const. Art. I, § 8, cls. 11–14.

6. "Military property" does not include property held by a military department only indirectly, such as through a non-appropriated fund instrumentality. *United States v. Schelin*, 12 M.J. 575 (A.F.C.M.R.1981); *United States v. Geisler*, 37 C.M.R. 530 (A.B.R.1966). *Contra, United States v. Harvey*, 6 M.J. 545 (N.C.M.R. 1978) *pet. denied*, 6 M.J. 193 (C.M.A.1979); *United States v. Mullins*, 34 C.M.R. 694 (N.B.R. 1964). Certainly offenses against property of the military exchanges or clubs have a greater impact upon morale in the armed forces than offenses against the private property of an individual service member, *United States v. Tucker, supra*, but, in each case, the extent to which such offenses are "service connected" must be measured on an *ad hoc basis. Relford v. Com-*

*mandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

7. Appellate defense counsel assert that the government's failure to prove the accused's knowledge of the *military* origin of the stolen property he knowingly received and concealed is somehow fatal to the exercise of court-martial jurisdiction. We disagree. *See, United States v. Trottier, supra*, note 27 and accompanying text. Stated more affirmatively, an accused's knowledge of the military nature of stolen property he knowingly and unlawfully receives and conceals, on-base or off-base, is irrelevant to the determination of the appropriateness of the exercise of military jurisdiction. Reliance upon the particular status of an object of a criminal offense as a basis for the exercise of criminal jurisdiction is an accepted concept in the civilian law. Several federal offenses, for example, are based upon the status of the victim as an element of the offense. *E.g.,* 18 U.S.C. § 111 (acts against a federal officer); 18 U.S.C. § 112 (acts against foreign officials or inter-nationally protected persons); 18 U.S.C. § 351 (acts against members or members-elect of Congress); 18 U.S.C. § 1751 (acts against the President, or person acting as President). The accused's knowledge of such status is neither an element of the offense, nor a jurisdictional requisite; lack of knowledge of such facts is not a defense. *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Dizdar*, 581 F.2d 1031 (2d Cir. 1978).

**538**

had a significant interest in the stolen property aspect of the case, our office declined to prosecute." That determination could not, of course, confer court-martial jurisdiction over a non-service connected offense. However, where there is a military interest affected by an offense cognizable by the UCMJ, and the only question is the appropriateness of exercising that jurisdiction, the non-availability of civil courts of the United States is an appropriate consideration. *See, United States v. Lange*, 11 M.J. 884 (A.F.C.M.R.1981), note 2 and accompanying text. Stated another way, a valid military interest in an offense committed by a service member need not be weighed against a hypothetical interest in the civilian criminal justice system; if there is no realistic potential for civilian prosecution, the military need not forego the exercise of court-martial jurisdiction.[8]

Because of the military nature of the stolen property received and concealed by the accused, there was a distinct military interest in the offenses which could be vindicated, if at all, only in a court-martial. Accordingly, the exercise of military jurisdiction was appropriate as the only means to vindicate the military interest in the accused's offenses of receiving and concealing the stolen military property.[9] In these circumstances, the exercise of military jurisdiction was "the least possible power adequate to the end proposed." *O'Callahan v. Parker, supra*, 395 U.S. at 265, 89 S.Ct. at 1687. *See, United States v. Lockwood*, 11

M.J. 818, (A.F.C.M.R.1981), Mahoney, Judge (concurring), note 3 and accompanying text. *See also, United States v. Trottier*, 9 M.J. 337, 352 (C.M.A.1981).

The remaining assigned error is resolved adversely to the accused. Assuming the sentencing argument of trial counsel improperly linked the accused's status as a security policeman with the commission of the offenses, *United States v. Goodson*, 7 M.J. 888 (A.F.C.M.R.1979); *United States v. Collins*, 3 M.J. 518 (A.F.C.M.R.1977), the lack of objection by trial defense counsel indicates minimal impact of the comment at trial. *United States v. Moore*, 6 M.J. 661 (A.F.C.M.R.1978). Moreover, any possibility of prejudice was purged by the military judge's observation to the court members that there was no indication that the accused's status as a security policeman in any way facilitated the offenses.

Based upon our review of the entire record, we conclude that the findings of guilty and the sentence are correct in fact and law, and they are

AFFIRMED.

POWELL, Senior Judge, and KASTL, Judge, concur.

---

**8.** The record discloses no indication that the appropriate United States Attorney expressed any interest in prosecuting the offenses. We can not say whether the U. S. Attorney's office was aware of the offenses or whether they would have met the current prosecution guidelines of that office. We have, however, considered the two possible federal offenses which might be used as a basis for prosecuting the accused's conduct. In view of the elements of those offenses, we believe the likelihood of a successful prosecution to be remote. Under 18 U.S.C. § 662, it would be necessary to prove that the receiving and concealing occurred within the confines of a federal enclave, namely, Travis Air Force Base, California. The lack of such proof is, of course, precisely the reason for extended discussion in this case. The other possible federal offense, under 18 U.S.C. § 2315, requires actual proof that the stolen

property was moving as a part of interstate commerce. *United States v. Tobin*, 576 F.2d 687 (5th Cir. 1978), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978). The mere presence of the stolen property on and adjacent to an interstate highway, a short distance from where it was stolen, and some 15 days after the theft, would appear to be inadequate to establish beyond a reasonable doubt that necessary element of the federal offense.

**9.** Obviously, we do not intend to imply that lack of access to civil courts of the United States renders any off-base offense "service connected." Here, for example, appropriate discretion was exercised in not prosecuting the accused's off-base drunk driving offense at the court-martial.