## UNITED STATES

v.

**Captain Mark F.B. LANGER, 109–50–6072 United States Air Force.**

**ACM 30533.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 13 Feb. 1993.

Decided 27 Jan. 1995.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, and Captain Richard D. Desmond.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, and Major John H. Kongable.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

BECKER, Judge:

Appellant contends the military judge erred in denying two motions to dismiss, one based on an interrogation which violated his Sixth Amendment right to counsel and the other alleging denial of speedy trial. Appellant also argues his conviction should be reversed because the court members improperly shifted the burden of proof to him, his trial defense counsel were ineffective, and the evidence was insufficient to prove his guilt. We find no error and affirm.

## I. BACKGROUND

Members convicted the appellant, contrary to his pleas, of one specification of using cocaine in violation of Article 112a, UCMJ, 10 U.S.C.A. § 912.[1] He was sentenced to a dismissal and confinement for two months. The prosecution was based on the results of an inspection urinalysis.[2] Appellant testified in his own defense and denied using the drug. The defense conceded the accuracy of the urine test, and relied on the defense of unknowing ingestion.

Appellant and other Air Force members played off-duty with a popular Cheyenne, Wyoming, club band called "Mr. Coffee and Grounds for Divorce." A musician acquaintance of the appellant, a Mr. B, testified that he saw a woman, known to him only as "Judy," pour a white powder into a cocktail on the night of 4–5 July 1992, while the two were watching "Mr. Coffee *et al*" perform. According to Mr. B, this drink and several others ended up on a table near the stage. Mr. B testified he then saw the appellant drink from one of these glasses.

On 7 July 1992, the appellant was notified of his random selection for urinalysis and provided his sample. In August, the Air Force Office of Special Investigations (AFOSI) at F.E. Warren Air Force Base, Wyoming, learned the appellant's urine sample had tested positively for cocaine metabolites. AFOSI called the appellant in for an interview. After waiving his Article 31, UCMJ,[3] rights and rights to counsel, the appellant denied all unlawful drug use. He then ended the interview by requesting an attorney. Appellant's squadron commander preferred the Charge and specification on 22 September 1992.

## II. SIXTH AMENDMENT VIOLATION

In late September and October 1992—after preferral of charges—Ms. G–P approached the appellant about joining his band as a bass player. Although she was indeed a musician, Ms. G–P was actually acting for the F.E. Warren AFOSI, who had recruited her as a drug informant and targeted her against the military members of "Mr. Coffee." According to Ms. G–P, the appellant made remarks which, taken in context, arguably were admissions of illegal drug involvement.[4]

At trial, the defense moved to suppress Ms. G–P's testimony as a violation of the appellant's Sixth Amendment right to counsel. The defense also moved to dismiss the Charge and specification because of this "outrageous" government misconduct. In testimony on the motion, Ms. G–P said that AFOSI had instructed her not to talk to the appellant or anyone else about drugs, even if they brought the subject up, and only to report what she saw and heard. This testimony differed somewhat from that of the AFOSI agents, who testified they instructed Ms. G–P, as part of a standard entrapment avoidance briefing, not to *initiate* conversations about drugs. The agents also insisted they knew nothing about the preferral of

---

1. 10 U.S.C. § 912a (1988).

2. *See* Mil.R.Evid. 313(b).

3. 10 U.S.C. § 831 (1988).

4. According to Ms. G–P, the appellant told her that AFOSI was investigating him for drug use and remarked "if they only knew," or words to that effect.

charges against the appellant on 22 September 1992.

The military judge found Ms. G–P's actions amounted to an unlawful interrogation of the appellant in absence of counsel, violating the Sixth Amendment. He suppressed the use of Ms. G–P's testimony in the prosecution's case-in-chief. However, he ruled the prosecution would be allowed to use Ms. G–P's testimony to impeach testimony by the appellant. He also denied the motion to dismiss, concluding the AFOSI's actions did not rise to an "outrageous" level justifying that drastic remedy. Appellant subsequently testified in his defense and vigorously denied the alleged cocaine use. The prosecution did not attempt to call Ms. G–P as a rebuttal witness. Appellant now claims the military judge erred in not dismissing the Charge and specification or suppressing Ms. G–P's testimony for all purposes. He argues the military judge's rulings improperly infringed on his ability to testify in his defense.

■ We agree with the appellant and the military judge that a Sixth Amendment violation occurred. Once formal criminal proceedings begin, police may not deliberately elicit statements from an accused without an express waiver of the right to counsel. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Mil.R.Evid. 305(d)(1)(B). This is true whether the questioning is in a custodial setting and done by persons known by the accused to be police (*Williams*), or surreptitiously by an undercover agent (*Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *Massiah* ). Looking at Ms. G–P's testimony alone, it appears the AFOSI may have been preparing her as merely a passive "listening post." If so, her mere presence while the appellant made incriminating statements arguably may not have violated his Sixth Amendment rights. *See Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). However, the testimony of the AFOSI agents undermines this theory. If they were ignorant of the preferral and only briefed Ms. G–

P not to *initiate* conversations about drugs, we can hardly credit AFOSI with an attempt to fit Ms. G–P's activities into the Sixth Amendment. Moreover, Ms. G–P initiated contact and conversations with the appellant, on two separate occasions, for the express purpose of gathering information about illegal drug activities. We find this deliberate ingratiation to be inconsistent with a passive "listening post." *Compare Kuhlmann* (defendant's cellmate instructed only to listen and report incriminating statements). We agree with the military judge that the prosecution failed to prove the appellant's statements to Ms. G–P were not obtained in violation of the Sixth Amendment, and he properly suppressed Ms. G–P's testimony in the prosecution's case-in-chief. *See* Mil.R.Evid. 304(e).

■ However, the military judge correctly permitted the prosecution to call Ms. G–P in rebuttal, if her testimony became relevant to impeach any testimony by the appellant. Mil.R.Evid. 304(b)(1) allows the use of an accused's statement to contradict his in-court testimony, even if the statement would otherwise be inadmissible because of violation of counsel requirements. This rule is consistent with the Supreme Court's Sixth Amendment opinions. In particular, we consider *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), to be controlling. In that case, the Supreme Court extended its Fifth Amendment precedent, which allows the impeachment use of statements taken in violation of the prophylactic rules protecting a defendant's right against self-incrimination,[5] to the Sixth Amendment area. In *Harvey,* police detectives took an incriminating statement from the defendant in a custodial interrogation after he had been charged and arraigned, without a valid waiver of his right to counsel. At trial, the prosecutor conceded the violation and did not attempt to offer the statement in his case-in-chief. However, the trial judge allowed him to use the statement when cross-examining the defendant, who had testified to a different version of events. The Supreme Court held this was proper, applying the same ra-

---

**5.** *See Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New* York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

tionale as in its Fifth Amendment opinions. The Court reasoned that, in an impeachment situation, the search for the truth in a criminal case outweighs the deterrence value of the exclusionary rule. In the Court's view, to hold otherwise would allow "the shield provided by [the prophylactic rule] [to] be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances." 494 U.S. at 353, 110 S.Ct. at 1182, quoting from *Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971).

We consider the reasoning in *Harvey* to be fully applicable here. We see no significant distinction between a Sixth Amendment violation committed in a station house, by police officers who have identified themselves to a suspect, and a covert one committed by an undercover agent. In each instance, society demands that the prosecution pay a price so that future violations may be deterred. That price is exclusion of the tainted evidence from the prosecution case-in-chief. However, society should not be made to suffer a Sixth Amendment violation as a license for an accused to commit perjury without fear of contradiction. Such a cost is too high.

■ We do not agree with appellant's argument that the specter of Ms. G–P's rebuttal improperly infringed upon his right to testify in his own defense. Initially, we note the appellant crafted his testimony to avoid expressly denying drug use other than that charged, while still implying that he had never abused drugs.[6] The trial counsel apparently decided not to "press the test" by calling Ms. G–P to impeach him. Notwithstanding, we do not consider the military judge's ruling to have materially restricted the appellant's testimony in any way. However, even accepting the premise that the appellant would have said more but for the *in terrorem* effect of Ms. G–P, we give him

no relief. As we have stated before in response to a similar complaint:

> [T]here is no requirement that an accused and his or her counsel be free of a "chilling effect" created by legitimate impeachment or rebuttal evidence. The rules of evidence contain various recognized avenues or "doors" through which evidence otherwise inadmissible in a case-in-chief may legitimately be brought before the court in rebuttal. [Citations omitted]. Tactical decisions by defense counsel, designed to keep such "doors" closed, are a legal fact of life and often call for foregoing the presentation of evidence or witnesses (including the accused) favorable to the defense.

*United States v. Cannon,* 30 M.J. 886, 889 (A.F.C.M.R.1990), *aff'd,* 33 M.J. 376, 382 (C.M.A.1991).

■ The military judge also correctly denied the motion to dismiss based on this Sixth Amendment violation. It is an accepted principle of due process that police misconduct may be so outrageous that the government will be absolutely barred from prosecuting the case. *United States v. Russell,* 411 U.S. 423, 431–432, 93 S.Ct. 1637, 1642–1643, 36 L.Ed.2d 366 (1973); *United States v. Bell,* 38 M.J. 358, 364 (C.M.A.1993); *United States v. Patterson,* 25 M.J. 650, 651 (A.F.C.M.R.1987). However, AFOSI's conduct here, while poorly conceived, did not remotely approach that level. *Cf. Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *United States v. Lemaster,* 40 M.J. 178, 181–183 (C.M.A.1994) (Sullivan, C.J., Gierke, J., and Wiss, J., concurring).

### III. SPEEDY TRIAL

■ Rule for Courts–Martial (R.C.M.) 707(a)(1) requires that an accused be brought to trial within 120 days of preferral of

---

**6.** The final series of questions on direct examination were:

Q: Captain, does that uniform mean anything to you?

A: Yes, sir, it does.

Q: What does it mean to you?

A: It means a lot of history, tradition, and something that I have dedicated my entire life to. I am very proud to wear this uniform and

I certainly did not intend to give it up without a fight.

Q: Did you, *at any time last summer, in late June or in early July,* violate the substance abuse policies of the Air Force *involving cocaine?*

A: No, sir, *never.*

(Emphasis added).

charges.[7] Pretrial delays may be excluded from government accountability, if they are approved by the convening authority (before referral) or the military judge (after referral). R.C.M. 707(c). The convening authority may delegate the power to approve delays to an Article 32, UCMJ,[8] investigating officer (I.O.). *Id.* (Discussion). Appellant was brought to trial on 10 February 1993, which was 141 days after the 22 September 1992 preferral. The defense moved to dismiss the Charge and specification because of this delay. The military judge denied the motion, finding that the government was accountable for only 68 days of the delay. Appellant now argues this was error. We disagree.

Much of the litigation in this motion focused on the delay between preferral (22 September 1992) and the Article 32, UCMJ, hearing (12 November 1992). The summary/special court-martial convening authority appointed the Article 32 I.O. on 25 September and expressly delegated authority to him to grant delays in the investigation. However, the only documented delay approved by the I.O. was from 31 October to 12 November (13 days), and was in response to a 27 October defense delay request. However, in this document (dated 30 October), the I.O. also purported to retroactively approve the delay between 22 September and 14 October (22 days), which he says was due to a defense request for a circuit defense counsel. In ruling on the motion, the military judge excluded 19 days of this period from the government's accountability. Appellant contends it was error to exclude this time. He

argues that, to be excluded under R.C.M. 707(c), delay approvals must be in *writing* and prospective in effect.

We need not address these arguments to resolve this issue. Besides the I.O.'s written, prospective delay approval from 31 October to 12 November, there is an electronic mail message from the military judge, dated 31 December 1992, approving a delay until 10 February 1993. This 41 day approved delay, by itself, brings the government's R.C.M. 707 accountability comfortably under the 120–day standard. Added to the period from 31 October to 12 November, this reduces the government's total accountability to 87 days. Therefore, the appellant's right to speedy trial under R.C.M. 707[9] was not violated.

## IV. IMPEACHMENT OF MEMBERS' FINDINGS

■ Appellant contends the court members ignored the military judge's instructions concerning the burden of proof. The basis of his argument is the responses of five court members to a posttrial questionnaire from the appellant's military defense counsel, which she attached to the appellant's clemency submission to the convening authority. According to the appellant, these members' answers to a "multiple choice" style question about how they reached their decision show the court improperly required him to prove he had not wrongfully ingested cocaine.[10]

This assignment is utterly without merit. Findings proper on their face may only be impeached by evidence that a member had

---

7. The other triggering events for the 120 day "clock" at R.C.M. 707(a)(2)–(3) are not pertinent here.

8. 10 U.S.C. § 832 (1988).

9. The record raises no issue concerning the appellant's speedy trial rights under the Sixth Amendment. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Because the appellant was neither confined nor placed under arrest prior to trial, there is no issue concerning his speedy trial rights under Article 10, UCMJ (10 U.S.C. § 810 (1988)). *See United States v. Kossman*, 38 M.J. 258 (C.M.A.1993).

10. After asking for the respondents' opinions about the performance of defense counsel, the next question was

4. During deliberations, the court-martial panel found Capt Langer guilty because (please circle appropriate response):
   a) The prosecution proved cocaine was in Capt Langer's body, and Capt Langer failed to prove the ingestion was unknowing.
   b) The prosecution proved cocaine was in Capt Langer's body, and the prosecution proved he ingested the cocaine knowingly.

Comments:
Of the five responses attached to the appellant's clemency submission, three circled "a," one circled neither and commented that there should have been a "c" ("The prosecution failed to prove their case"), and one circled both.

been exposed to extraneous prejudicial information, outside influence, or unlawful command influence. R.C.M. 923. This heavy-handed intrusion on the members' deliberative process, in the guise of a request for feedback on counsels' performance, was highly improper. *See* Mil.R.Evid. 606(b), which permits questioning of court members only on the areas addressed by R.C.M. 923. This Court has recently condemned a posttrial defense questionnaire with loaded questions asking how members considered certain evidence:

> There is an understandable judicial reluctance to permit inquiry into the state of mind of a court member after a court-martial has adjourned. This is to avoid harassment of court-members with attempts to secure evidence that might impeach a verdict.
>
> \* \* \* \* \* \*
>
> The inquiries [in the questionnaire] were not designed to disclose objective, extraneous matters that may have improperly influenced the panel's deliberations. Instead, these questions sought to impeach each panel member's subjective interpretation of the evidence—the precise material the rule seeks to protect.

*United States v. Heimer*, 34 M.J. 541, 545, 546 (A.F.C.M.R.1991). For like reasons, we also condemn this questionnaire, for inquiry into how court members used instructions also violates Mil.R.Evid. 606(b) and R.C.M. 923. *United States v. Commander*, 39 M.J. 972 (A.F.C.M.R.1994). *Cf. United States v. Accordino*, 20 M.J. 102, 105 (C.M.A.1985).

## V. REMAINING ISSUES

 In a posttrial affidavit, the appellant criticizes many tactical decisions by his civilian and military trial defense counsel, and claims he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment. We disagree. In their posttrial affidavits, trial defense counsel explain their decisions. We will not second-guess their judgment. *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A.1993); *United States v. Dale*, 39 M.J. 503, 506 (A.F.C.M.R.1993). The record reveals the appellant's trial law-

yers' performance far exceeded the Sixth Amendment standard for effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987).

Finally, the appellant contends the evidence is factually insufficient to prove he wrongfully ingested cocaine. We have examined the entire record of trial, weighed the evidence, and judged the credibility of the witnesses, recognizing that the members saw and heard the witnesses. Art 66(c), UCMJ.[11] We are convinced beyond a reasonable doubt the appellant is guilty as charged. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

The findings and sentence are correct in law and fact. Accordingly, they are

AFFIRMED.

Chief Judge DIXON and Senior Judge YOUNG concur.