In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3232

United States of America,

Plaintiff-Appellee,

v.

Lamilton Briggs,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-CR-10099--Michael M. Mihm, Judge.

Argued April 4, 2002--Decided May 29, 2002


   Before Ripple, Kanne, and Evans, Circuit
Judges.

   Kanne, Circuit Judge.  A jury convicted
appellant Lamilton Briggs of distributing
crack cocaine, based on a controlled drug
purchase. Because Briggs possessed a
large amount of crack at the time of his
arrest, he was also convicted of
possession of crack with the intent to
distribute. He appeals, arguing (1) there
was insufficient evidence to support his
convictions, (2) the district court erred
in denying his motion for a new trial
based on a juror's post-trial
questionnaire, and (3) his conviction
violates the rule set forth in Apprendi
v. New Jersey, 530 U.S. 466, 120 S. Ct.
2348, 147 L. Ed. 2d 435 (2000). We
affirm.

I.  History

   At trial, the following facts were
adduced: Orlando Davis, a confidential
FBI informant, met with FBI Task Force
Agent Jeff Avery at the Peoria, Illinois
FBI office in order to arrange a
controlled purchase of crack from Briggs.
After Davis arrived at the FBI office, he
was searched for money and for drugs, and
finding neither, law enforcement agents
outfitted Davis with a body-recording
device and a transmitter. Davis then
paged Briggs, who returned the page,
acknowledging himself as "Milton" in a
recorded phone call. During that call,

Davis and Briggs agreed to meet at a pre arranged location, and Agent Avery provided Davis with $2,000 in cash.

Following the phone call with Briggs, Davis and Agent Avery drove in Davis' car to meet Briggs at the Pierson Hills housing complex in Peoria. After arriving at the complex, Agent Avery left Davis' car and joined other law enforcement agents in establishing visual surveillance of the complex. Davis then drove into the complex, located Briggs' car, and joined Briggs inside of that car. While in the car, Davis provided Briggs with $2,000 in cash in exchange for 54.7 grams of crack./1 Following this transaction, Davis met with Agent Avery and provided him with the crack that he had obtained from Briggs.

Law enforcement agents obtained a warrant for Briggs' arrest based on the transaction with Davis and conducted surveillance at the Seven Oaks apartment complex in Peoria where agents knew Briggs to reside. After approximately two weeks of surveillance, law enforcement agents went to Seven Oaks Apartment 1001 to arrest Briggs. The law enforcement agents knocked several times and announced their identity and presence, and stated that they had a warrant for Briggs' arrest. They received no response, although one agent observed movement inside of the apartment. After continuing to announce their presence and after again receiving no response, agents forcibly entered the apartment. Once inside the apartment, the agents saw a person identified as Harold Washington sitting on the couch in the living room. Eventually, Briggs appeared from the back room of the apartment and was placed under arrest.

Following Briggs' arrest, a law enforcement agent conducted a protective sweep of the apartment and discovered a large amount of money and cocaine. Two agents testified that Briggs confessed that the drugs in the apartment belonged to him and that Washington had nothing to do with those items. Based on the drugs seen in plain view during the protective sweep, law enforcement agents obtained and lawfully executed a search warrant for the apartment. During that search, agents seized numerous plastic bags containing, in total, 161 grams of crack

cocaine, an additional 175.6 grams of powder cocaine, two digital scales, a cutting tray, several cell phones and pagers, and approximately $6,350 in cash.

Additionally, Jennifer Jones, a marketing representative for Seven Oaks, testified that Apartment 1001 was rented to a person identified as "James Pierson." On several occasions, "Pierson" came to the apartment complex office and paid his monthly rent with money orders. Jones identified Briggs as the person she believed to be "Pierson."

In his defense, Briggs attempted to challenge the credibility of the government's witnesses as well as to show that the drugs in the apartment did not belong to him. For example, the two agents that testified that Briggs hadconfessed to the possession of the drugs admitted on cross-examination that they had failed to include Briggs' admission in their police report. Briggs' mother testified that during the time in question, he lived with and took care of her because she had been injured at work. Finally, Davis admitted writing a letter to Briggs' girlfriend, offering not to testify in exchange for $7,500.

The jury then convicted Briggs of one count of distribution of fifty or more grams of crack, in violation of 21 U.S.C. sec. 841(a)(1) and (b)(1)(A), and one count of possession of fifty or more grams of crack with the intent to distribute it in violation of 21 U.S.C. sec. 841(a)(1) and (b)(1)(A)(1). After the jury convicted Briggs of both counts but prior to sentencing, the district court received an exit questionnaire from one of the jurors. In that questionnaire, the juror described the deliberative process and the role she played in that process. Although the juror had stated that she had been "intimidated" by other jurors into finding Briggs guilty, the juror did not suggest that any extraneous information or outside influence had been brought to the jury's attention. Based on the juror's questionnaire, Briggs filed a motion for a hearing to determine the validity of the jury's verdict.

Before the district court, Briggs' counsel acknowledged that the juror's statements fell within the purview ofFederal Rule of Evidence 606(b), and

were thus inadmissable./2 Further, neither exception to Rule 606(b)--extraneous information nor outside influence--applied that would allow the questionnaire to be admitted into evidence. Initially, the district court agreed that the juror's statements did not raise any issue as to whether any extraneous information or outside influence had been brought to the jury's attention. Relying on this court's decision in United States v. Ford, 840 F.2d 460, 465-66 (7th Cir. 1988), the district court then denied Briggs' motion. After the district court had ruled on the motion and at the suggestion of the government, the district court allowed Briggs to contact the juror to inquire into the statements the juror had made in her questionnaire because the court was concerned that "intimidation" could mean physical intimidation of some sort.

Briggs' counsel contacted the juror and conducted a recorded interview of her. During that interview, the juror made clear that there was no physical intimidation of any sort. Further, the juror explained that neither extraneous information nor outside influence had been brought to the jury's attention and that she was merely unhappy with the deliberative process. At sentencing, the district court again considered Briggs' motion for a hearing to determine the validity of the jury's verdict. After reviewing the transcript of the interview with the juror, the district court reaffirmed his denial of the motion for a hearing and the motion for a new trial. Subsequently, the district court sentenced the defendant to a mandatory term of life imprisonment on each of the two counts, to run concurrently.

II. Analysis

Briggs first challenges his convictions based on the sufficiency of the evidence. In weighing the sufficiency of the evidence, we view the evidence in the light most favorable to the government and will reverse a conviction only if no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). To prove the offense of distribution of a

controlled substance, the government must prove that a defendant knowingly distributed a controlled substance and that the defendant knew that what he distributed was a controlled substance. See, e.g., United States v. Hatchett, 245 F.3d 625, 631 (7th Cir. 2001). To establish that a defendant possessed crack with the intent to distribute it, the government must prove that the defendant: "(1) knowingly or intentionally possessed cocaine; (2) possessed it with the intent to distribute; and (3) knew it was a controlled substance." United States v. Stribling, 94 F.3d 321, 324 (7th Cir. 1996).

As we noted, Briggs cannot prevail on his sufficiency of the evidence claim unless he demonstrates that no rational jury could have found the essential elements of the offense. See Jackson, 443 U.S. at 319. Instead of making such a showing, Briggs offers a competing characterization of the evidence and challenges the credibility of the government's witnesses. For example, Briggs repeatedly notes that Davis was a paid informant and that Briggs' admission was not included in the initial police report. However, "questions of credibility are solely for the trier of fact, [and] such arguments are wasted on an appellate court." United States v. Henderson, 58 F.3d 1145, 1148 (7th Cir. 1995). Indeed, in the present case, the evidence on the distribution count is overwhelming, and Briggs' challenge borderlines on the frivolous. Davis and several FBI agents testified that Briggs participated in a controlled drug purchase with Davis while under law enforcement surveillance. Further, an audio cassette tape of the transaction was admitted at trial, and Briggs' voice was authenticated by Agent Avery. Thus, the distribution conviction must be affirmed.

Similarly, Briggs' challenge to his possession with the intent to distribute conviction also fails. Two FBI agents testified that Briggs confessed that the 161 grams of crack and the 175.6 grams of powder cocaine belonged to him. Briggs was also arrested coming out of the room that contained the cocaine. Further, Jones testified that Briggs, under the name of "Pierson," had paid for the

apartment in which the crack was found. Finally, the crack was found in individual packaging, with scales, and a tray to cut it up along with numerous phones and pagers. See, e.g., United States v. Molinaro, 877 F.2d 1341, 1345-46 (7th Cir. 1989) (holding that scales, plastic baggies, and cutting agents support an inference of an intent to distribute). This evidence is more than adequate for the jury to convict Briggs of possession with the intent to distribute.

Briggs next contends that the district court erred in denying his motion for a hearing to determine the validity of the jury's verdict and for a new trial based on the juror's questionnaire. We faced a similar situation in Ford, 840 F.2d at 465. In Ford, the district court received a letter from a juror eleven days after the conclusion of the trial, claiming that the jurors and the jury foreman had behaved improperly during deliberations. See id. There were allegations that votes were taken prior to deliberation and that they were taken orally, and that there had been "extreme and excessive pressure on individuals to change votes." Id. In spite of these claims, the district court refused to hold a hearing to determine whether improper influences on jurors occurred during deliberations. We affirmed this ruling stating that under Fed. R. Evid. 606(b) "a court will not inquire into the jury's deliberative process, including arguments, statements, discussions, mental and emotional reactions, and votes, in the absence of a claim of external influence." Id. Because the juror's letter involved only "intrajury influences on the verdict," we affirmed the district court's denial of a hearing. Id. at 465-66.

As in Ford, the juror's questionnaire answer in the present case did not allege that any extraneous prejudicial information was brought to the jury's attention or that any outside influence was brought to bear on any juror. Further, the district court allowed Briggs to interview the juror and that interview confirmed these conclusions. As we noted in Ford, Rule 606(b) "is designed not only to protect the jurors from being pestered by lawyers after the verdicts are rendered, but also to protect the judicial process from efforts

to undermine verdicts by scrutinizing the jurors' thoughts and deliberations." Id. at 465. Because both the juror's questionnaire and her interview only allege "intrajury influences on the verdict during the deliberative process," id., we affirm the district court's denial of Briggs' motion./3 See Fed. R. Evid. 606(b).

Next, Briggs asserts that reversal is required because, according to Briggs, Apprendi, 530 U.S. 466, requires that prior convictions be charged in the indictment and submitted to the jury and proven beyond a reasonable doubt. Briggs, however, did not raise this claim in the district court as he specifically agreed with the jury instructions submitted to the jury, and accordingly, this argument is waived on appeal. See United States v. Cooper, 243 F.3d 411, 415-16 (7th Cir. 2001). Further, even if we were to conclude that this argument was not waived, we would still reject it. See Apprendi, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); Almendarez-Torres v. United States, 523 U.S. 224, 247, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) (holding that enhancements based on recidivism need not be established beyond a reasonable doubt); United States v. Skidmore, 254 F.3d 635, 642 (7th Cir. 2001) ("Apprendi does not overrule the holding of Almendarez-Torres that penalty enhancements based on recidivism need not be established beyond a reasonable doubt.").

Finally, Briggs' contention that 21 U.S.C. sec. 841 is facially unconstitutional is meritless. See United States v. Brough, 243 F.3d 1078, 1080 (7th Cir. 2001) ("[T]here is no constitutional defect in the design of sec. 841, and . . . there is no impediment to convictions under the statute as written").

III.  Conclusion

For the forgoing reasons, Briggs' convictions and sentence are AFFIRMED.

FOOTNOTES

/1 An audio cassette tape of the transaction was entered into evidence at trial.

/2 Federal Rule of Evidence 606(b) provides: Upon inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence or any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

/3 Briggs' attempt to frame this argument as a due process violation is without merit and does not warrant discussion.