UNITED STATES

v.

Airman First Class Nicholas F.G. BOBBY, United States Air Force.

ACM 35537.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 March 2003.

15 Aug. 2005.

Appellate Counsel for Appellant: Major Andrew S. Williams.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs, and Major Lane A. Thurgood.

Before PRATT, Chief Judge, ORR, and MOODY, Appellate Military Judges.

## OPINION OF THE COURT

PRATT, Chief Judge:

The appellant was tried at Holloman Air Force Base, New Mexico, by a military judge sitting as a general court-martial. Consistent with his pleas, the appellant was convicted of using cocaine and marijuana on divers occasions during a three-month period in 2002 in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The military judge sentenced the appellant to a bad-conduct discharge, confinement for 6 months, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the findings and sentence as adjudged.

On appeal, the appellant asserts that he was materially prejudiced by the military judge's consideration of his duty position as an aggravating factor in evaluating an appropriate sentence. This issue arises in a somewhat unusual fashion in this case. Ordinarily, issues of this nature arise in the context of alleged improper argument by trial counsel, introducing the possibility that the sentencing authority improperly considered an accused's duty position as an aggravating factor. *See United States v. Collins*, 3 M.J. 518 (A.F.C.M.R.1977), *aff'd*, 6 M.J. 256 (C.M.A.

1979). In this case, however, it was not the trial counsel who proposed a "linkage" between the accused's duty position and the offenses; it was the trial judge himself. After announcing the sentence and reviewing with the appellant his post-trial and appellate rights, the military judge stated on the record:

> All right. Airman First Class Bobby, *I considered heavily the fact that you were a crew chief on an F–117 fighter, one of the most advanced fighters that the Air Force has,* but I weighed against that the sentencing evidence that you and your attorney presented in this trial, and we call it mitigation evidence, and I factored that very heavily into my sentence. I wanted you to know that.

(Emphasis added.)

This rather unusual setting gives rise to two distinct issues: (1) Whether the military judge can impeach his own announced sentence by disclosing his mental process during deliberations,[1] and if so, (2) Whether, under the facts of this case, it was improper for the trial judge to consider the appellant's duty position as an aggravating factor in sentencing. We ultimately answer both of these questions in the affirmative and will grant relief to the appellant.

### Impeachment of Judge's Announced Sentence

■ As noted above, issues involving consideration of an accused's duty position as an aggravating factor usually arise in the context of the admission of evidence or the delivery of argument by counsel. Notably, these events occur in open court prior to closing the court for deliberations by the sentencing authority (court members or judge alone). In this case, the judge's remarks occurred in open court *after* deliberations and *after* the announcement of sentence. As such, and taken in context, his remarks clearly reflect his thoughts and considerations—his mental process—during his deliberations.

---

1. Although not raised in the appellant's brief to this Court, this issue was peripherally raised

during oral argument before the Court.

Rules for Courts–Martial (R.C.M.) 923 (findings) and 1008 (sentencing) embody what began as a long-standing common law rule that "a juror cannot impeach his own verdict." *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). In consonance with those rules, the Military Rules of Evidence generally prohibit court members from disclosing or exposing their deliberations. Mil. R. Evid. 606(b), taken virtually verbatim from its federal counterpart, Fed.R.Evid. 606(b),[2] provides:

> Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon a member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith, except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence. Nor may the member's affidavit or evidence of any statement by the member concerning a matter about which the member would be precluded from testifying be received for these purposes.

These rules recognize the necessity of protecting the privacy of the deliberations room, "even when this protection places some instances of willful disregard of the applicable law beyond the reach of the court's corrective powers." *United States v. Thomas*, 116 F.3d 606, 623 (2d Cir.1997). The Supreme Court explained the choice that underlies the rule:

> The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils.... [T]he court must choose between redressing the injury of the private litigant and inflicting the public injury which would

result if jurors were permitted to testify as to what had happened in the jury room.

. . . .

> But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

*McDonald*, 238 U.S. at 267–68, 35 S.Ct. 783.

In the absence of evidence of the introduction of extraneous prejudicial information, improper outside influence, or (in military courts) unlawful command influence, most courts have strictly enforced this prohibition against invading the deliberations room through the use of post-trial statements by jurors or others. *See United States v. Langer*, 41 M.J. 780, 786 (A.F.Ct.Crim.App.1995) (post-trial questionnaire "highly improper"); *United States v. Witherspoon*, 16 M.J. 252 (C.M.A.1983) (affidavits alleging extraneous information); *United States v. Briggs*, 291 F.3d 958 (7th Cir.2002) (juror complaint that she had been intimidated by other jurors); *United States v. DiSalvo*, 34 F.3d 1204, 1224 (3d Cir.1994) (statement by juror that "[y]ou can't get into this situation and not be guilty"); *United States v. Murphy*, 836 F.2d 248 (6th Cir.1988) (deliberations reportedly affected by juror's plans to leave on vacation); *United States v. Ford*, 840 F.2d 460 (7th Cir.1988) (excessive pressure on jurors to change votes); *United States v. Campbell*, 684 F.2d 141 (D.C.Cir.1982) (not appropriate to delve into the mental processes of the

---

2. The only substantive difference between Mil. R. Evid. 606(b) and Fed.R.Evid. 606(b) is the addition of unlawful command influence as an exception to the Rule's prohibition against court member testimony. *United States v. Loving*, 41 M.J. 213, 235 (C.M.A.1994).

jurors); *United States v. Friedland*, 660 F.2d 919 (3d Cir.1981) (jurors reportedly discussed the defendant's failure to testify). And this is as true in sentencing deliberations as it is in findings deliberations. *United States v. Straight*, 42 M.J. 244 (C.A.A.F. 1995); *Loving*, 41 M.J. at 234–40; *United States v. Jones*, 132 F.3d 232 (5th Cir.1998), *aff'd*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

As stated above, the policy underpinning these rules stems from a concern for freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment. *United States v. Bishop*, 11 M.J. 7, 9 (C.M.A.1981). If jurors were allowed to impeach their verdicts, every verdict would be at the mercy of its individual jurors and there would be considerable potential for juror tampering and harassment by those dissatisfied with the result. *See Grenz v. Werre*, 129 N.W.2d 681 (N.D.1964). Fed.R.Evid. 606(b) was designed to protect the entirety of the jury's deliberative process, including arguments, statements, discussions, mental and emotional reactions, and votes. Fed.R.Evid. 606, Advisory Committee Note. Not only are the jurors protected from being "pestered by lawyers after verdicts are rendered," but also the judicial process is protected "from efforts to undermine verdicts by scrutinizing the jurors' thoughts and deliberations." *Ford*, 840 F.2d at 465 (citing *United States v. Schwartz*, 787 F.2d 257, 261–62 (7th Cir.1986)). *See also United States v. Allen*, 736 F.Supp. 914, 918 (N.D.Ill. 1990), *aff'd sub nom. United States v. Sanders*, 962 F.2d 660 (7th Cir.1992). Without such protection, court members might well hesitate to engage in the full and free discussion so fundamental to our deliberations process.

Less clear is the application of these well-settled rules and policies in situations in which a military judge is the trier of fact or the sentencing authority. Mil. R. Evid. 606(b) specifically addresses court members. The corollary rule applicable to military judges, Mil. R. Evid. 605, does not address inquiry into deliberations. Similarly, the rules addressing impeachment of findings (R.C.M. 923) and sentence (R.C.M. 1008)

clearly address the conduct of court members only. Nevertheless, military courts have generally applied these same principles to impeachment of findings and sentences issued by military judges. *See United States v. Gonzalez*, 42 M.J. 373 (C.A.A.F.1995); *United States v. Rice*, 25 M.J. 35 (C.M.A. 1987); *United States v. Lentz*, 54 M.J. 818 (N.M.Ct.Crim.App.2001).

Likewise, despite the fact that Fed.R.Evid. 606(b) addresses only jurors, the federal courts have also found frequent occasion to apply these same principles to trial judges. *See Washington v. Strickland*, 693 F.2d 1243 (5th Cir.1982) (en banc) (the same strong policy reasons for not inquiring into the mental processes of jurors applied to a State trial judge), *rev'd on other grounds*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Proffitt v. Wainwright*, 685 F.2d 1227, 1255 (11th Cir.1982) ("Such post-decision statements by a judge or juror about his mental processes in reaching decision may not be used as evidence in a subsequent challenge to the decision."); *United States v. Harvey*, 544 F.Supp. 189, 191 (S.D.Fla.1982) ("The mental processes of a judge are not the proper subject of compelled testimony."), *aff'd sub nom. United States v. Van Horn*, 789 F.2d 1492 (11th Cir.1986).

The rationale for protecting the mental processes of trial judges is somewhat different than that applicable to jurors. Of course, military judges do engage in deliberations, but they do so alone. Thus, unlike with jurors, there is no concern for "chilling" full and free discussion. For the same reason, in judge-alone cases, there is no policy concern that one disgruntled member of the deliberative process will be able to unilaterally undermine its collective decision by making claims of improper conduct or mental process. And further, unlike individual court members, military judges are decidedly less susceptible to post-trial harassment by those seeking to undermine their verdict or sentence. Despite these differences, however, it has become "a firmly established rule in our jurisprudence that a judge may not be asked to testify about his [or her] mental processes in reaching a judicial decision." *Washington v. Strickland*, 693 F.2d at 1263. In *Fayer-*

*weather v. Ritch*, 195 U.S. 276, 306–07, 25 S.Ct. 58, 49 L.Ed. 193 (1904), the Supreme Court explained:

> [T]he testimony of the trial judge, given six years after the case had been disposed of, in respect to the matters he considered and passed upon, was obviously incompetent. True, the reasoning of the court for the rule [prohibiting testimony by jurors] is not wholly applicable, for as the case was tried before a single judge there were not two or more minds coming by different processes to the same result. Nevertheless no testimony should be received except of open and tangible facts—matters which are susceptible of evidence on both sides. A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision.

*See also United States v. Crouch*, 566 F.2d 1311 (5th Cir.1978). In keeping with the concern expressed in *Fayerweather*, most cases espousing the application of this rule to trial judges involve situations in which attempts are being made to probe, subpoena, or otherwise compel trial judges to divulge their mental processes, often as to judicial decisions made years prior. Thus, concerns for accuracy are mixed with concerns for finality:

> The testimony is often given several years after the fact and a judge is unlikely to be able to reconstruct his thought processes accurately over such a span of time. Second, the finality and integrity of judgments would be threatened by a rule that enabled parties to attack a judgment by probing the mental processes of a judge.

*Washington v. Strickland*, 693 F.2d at 1263. *See also United States v. Roth*, 332 F.Supp.2d 565 (S.D.N.Y.2004); *United States v. Roebuck*, 271 F.Supp.2d 712 (D.Vi.2003); *Perkins v. LeCureux*, 58 F.3d 214 (6th Cir. 1995); *United States v. Cross*, 516 F.Supp. 700, 707 (M.D.Ga.1981) ("[J]udges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed."), *aff'd*, 742 F.Supp.2d 1279 (11th Cir.1984).

Although we accept and agree with this well-established principle, and are loath to depart from its proper application, we do not believe that it warrants application in the somewhat unusual setting presented by the case before us. The policy considerations discussed above as rationale for these rules, both with regard to jurors and trial judges, do not appear to be at play in this case. The potential impact of the passage of time on accuracy is certainly not present, as the trial judge made his statement within minutes of announcing his sentence. Any concern about the negative impact of subpoenaing judges or otherwise allowing parties to probe the judge's mental processes is absent in this case, as this judge volunteered his statement without the slightest request or urging by either counsel or the accused.

In our view, the sole policy consideration favoring application of the rule in this case is judicial finality. Yet, again, all the cases we can find addressing this principle involve *out-of-court, post-trial* requests—often years later—for declarations or testimony by the trial judge. In those situations, the concern for finality is pointed. In contrast, in the case now before us, the statement of the trial judge occurs *on the record*, in the very proceeding in which the sentencing took place, just moments after its announcement. At least one federal court, in the course of upholding the general prohibition, hints at a possible exception for such statements made on the record:

> When a verdict is rendered, neither the judge nor the jury is asked for justifications. The decision may be reviewed and reversed, modified or amended. However, the trier of fact is not to be placed on the witness stand and cross examined as to the reasons for the outcome, absent evidence of improprieties in the decision making process itself. *If a judge seeks to give reasons for a decision, we are wiser for what is said on the record.*

*Morrison v. Kimmelman*, 650 F.Supp. 801, 807 (D.N.J.1986) (emphasis added).

In this somewhat unique setting, we believe the interest of judicial finality is considerably less pronounced and must be balanced against a key competing interest—public

confidence in the integrity and fairness of our judicial system. Balancing those interests in this case, we believe the scales tip in favor of not shielding the trial judge's statement from consideration on the issue of proper aggravation. Our overarching obligation to do justice requires no less. Article 66(c), UCMJ, 10 U.S.C. § 866(c). Accordingly, we turn now to the question whether the judge's remark indicates improper consideration of the appellant's duty position.

### Duty Position as Aggravating Factor

Any aggravating circumstances "directly relating to or resulting from the offenses of which the accused has been found guilty" can constitute aggravation evidence. R.C.M. 1001(b)(4). In arguing that such circumstances exist and should be considered by the sentencing authority in aggravation, a trial counsel is constrained by the well-established principle that they "may strike hard blows," but they are "not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Toro,* 37 M.J. 313, 318 (C.M.A. 1993); *United States v. Doctor,* 21 C.M.R. 252, 259, 1956 WL 4578 (C.M.A.1956). Thus, trial counsel is limited to the evidence of record and "such fair inferences as may be drawn therefrom." *United States v. White,* 36 M.J. 306, 308 (C.M.A.1993) (quoting *United States v. Nelson,* 1 M.J. 235, 239–40 (C.M.A.1975)). *See also United States v. Johnson,* 31 C.M.R. 188, 1962 WL 4391 (C.M.A.1962).

■ As regards duty position, this Court first addressed the issue in *United States v. Collins,* wherein we found error in the trial counsel's attempt to "connect" the accused's duty position with the charged drug offense. In his presentencing argument, the trial counsel stated:

> Airman Collins, in setting up the sale by establishing the price, quantity, the time and the place, violated basically a trust he has with this base. He was in security. It was his responsibility to protect the most lethal weapons which we have in our arsenal. This is someone who is supposed to be protecting them. And the day before he starts his duties in the [Security Alert Team], he sells LSD.

*Collins,* 3 M.J. at 519. Although the accused in *Collins* was indeed assigned to the security police organization and did sell LSD, the Court held there was nothing in evidence to suggest that his duty position was in any way connected to the offense committed. And, therefore, there was no legitimate inference that his misconduct violated a special trust. The Court explained:

> His sale of LSD was in no demonstrable way facilitated by his status, nor was there any evidence that he abused such status in committing the offense. In short, the trial counsel had no justifiable basis for his argument that the accused's membership in the security police unit (as opposed to any other organization) was an aggravating circumstance.

*Id.* at 520–21. In essence, *Collins* and its progeny have come to stand for the proposition that it is not a "fair inference" to argue that a member's duty position aggravates the offense unless the evidence of record demonstrates some reasonable linkage or manner in which the offense was facilitated by the duty position or the duty position was somehow compromised by the offense. *United States v. Desiderio,* 31 M.J. 894, 896 (A.F.C.M.R. 1990); *United States v. Gruninger,* 30 M.J. 1142, 1143 (A.F.C.M.R.1990); *United States v. Peter,* 17 M.J. 799 (A.F.C.M.R.1983); *United States v. Lewis,* 7 M.J. 958 (A.F.C.M.R.1979); *United States v. Moore,* 6 M.J. 661 (A.F.C.M.R.1978).

■ As quoted earlier, the trial judge in this case advised the appellant that he considered "heavily" the fact that the appellant was "a crew chief on an F–117 fighter, one of the most advanced fighters" in the Air Force. The government argues the judge's comment properly referenced testimony concerning unit impact. *See* R.C.M. 1001(b)(4). During the sentencing portion of the trial, the trial counsel did call the unit First Sergeant as a witness to discuss the circumstances surrounding the appellant's five-day AWOL, for which he received nonjudicial punishment a week before trial. Additionally, the first sergeant gave brief testimony indicating that, after the appellant was first identified as a drug abuser, he was no longer able to perform his duties as an aircraft crew chief.

Although some reference was made to unit impact, the first sergeant's testimony did not expound at all on the extent of any such impact. And, in trial counsel's sentencing argument, only passing reference was made to unit impact. All in all, a fair reading of the record of trial and a fair interpretation of the judge's post-sentencing remarks do not support a conclusion that the judge was referring to unit impact. On the contrary, in the context of this case, we conclude that the judge's words indicate that he considered the appellant's duty position, in and of itself, as an aggravating factor.

As in *Collins*, however, there is no evidence to suggest that the appellant's position as an F–117 crew chief facilitated or was in any way connected to his use of cocaine and marijuana. Similarly, there is no evidence in this record that fairly supports an inference that his use of cocaine and marijuana had a reasonably direct impact on the performance of his duties.[3] In this context, we conclude that the trial judge erred by considering the appellant's duty position as an aggravating factor.

In so holding, we specifically reject the government's suggestion that we use this occasion to overrule *Collins* and its "mischievous progeny." On the contrary, we conclude that this case fits appropriately within the principle enunciated in *Collins* and reinforces its wisdom. More fittingly termed "mischievous" are attempts by prosecutors to infer that an accused's duty position aggravates an offense in the absence of any facts or circumstances fairly suggesting that it does so. It would be folly, however, to conclude that *Collins* or its progeny establish a "bright line rule" as regards duty position as a potential aggravating factor. Instead, as with all other potentially aggravating factors, a determination must be made on a case-by-case basis, after weighing the evidentiary circumstances of each case.

Having found error, we must assess whether the error materially prejudiced this appellant. Article 59(a), UCMJ, 10 U.S.C. § 859(a). In many cases involving improper consideration of duty position, our Court has found no likelihood of impact on the adjudged sentence. *See Desiderio*, 31 M.J. at 896; *United States v. Thomaselli*, 14 M.J. 726, 728 (A.F.C.M.R.1982); *United States v. Chitwood*, 12 M.J. 535, 538 (A.F.C.M.R.1981). However, in this case, the judge announced that he "heavily" considered the appellant's duty position. Therefore, we are convinced that prejudice occurred.

*Sentence Reassessment*

Finding both error and prejudice, we will grant relief. In *United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F.2002), our superior court summarized the required analysis:

> In *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), this Court set out the rules for sentence reassessment by a Court of Criminal Appeals. If the court can determine that, absent the error, the sentence would have been at least of a certain magnitude, then it may cure the error by reassessing the sentence instead of ordering a sentence rehearing. *Id.* at 307. A sentence of that magnitude or less "will be free of the prejudicial effects of error." *Id.* at 308.

We are cognizant that "[t]he standard for reassessment is not what would be imposed at a rehearing but what would have been imposed at the original trial absent the error." *United States v. Taylor*, 47 M.J. 322, 325 (C.A.A.F.1997). We have considered the entire record of trial and the evidence properly admitted during presentencing.

This appellant was convicted of using both marijuana and cocaine on divers occasions over a three-month period. In his *Care*[4] inquiry, the appellant acknowledged using marijuana about 7–8 times altogether during

---

**3.** Our conclusion might be different if the trial counsel had presented testimony or the record contained evidence establishing such connections. For instance, if the record contained evidence of a specific nanogram level and other evidence or testimony justifying a fair inference that the appellant would have been actively impaired while performing his duties as a crew chief, a different result would ensue. *See, e.g., United States v. McNeal*, ACM S29528, 1999 WL 219760, unpub. op. at 2–5 (A.F. Ct.Crim.App. 12 Feb 1999).

**4.** *United States v. Care*, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969).

that period, and once even after he learned he was under investigation. He stated he used cocaine "10 to 15 times." Also before the trial court was the nonjudicial punishment action for the appellant's five-day, post-preferral AWOL and a pre-service civilian conviction for underage possession/consumption of alcohol in a motor vehicle. Considering the offenses of which the appellant stands convicted, and his individual attributes and circumstances, we find his adjudged sentence to be decidedly lenient. But, given the clear indication that this judge "heavily" considered the objectionable matter, and in view of our responsibility under *Sales*, we will provide an appropriate measure of relief. We affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for 4 months, forfeiture of all pay and allowances, and reduction to E–1. We are fully confident that, without consideration of the appellant's duty position, the judge would have adjudged no less a sentence.

### Conclusion

The approved findings and the sentence, as reassessed, are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and the sentence, as reassessed, are

AFFIRMED.